and Joseph E. Burkett. The case is number 219-0187, People of the State of Illinois, Plaintiff Appellee v. Seth A. Dryer, Defendant Appellant. Arguing for the Appellant, Elena B. Penick. Arguing for the Appellee, Stephanie Hoyt Lee. Good morning, Counsel. If you are ready, we will proceed. I will start with Ms. Penick. Thank you, Your Honor. Good morning, Your Honors, Counsel. May it please the Court, my name is Elena Penick, appearing on behalf of Defendant Appellant Seth Dryer. Mr. Dryer had been living in Texas at the time of the offenses at issue in this case, which were all predicated on his allegedly communicating with two 10-year-old boys by means of an Xbox gaming system with live video chatting capabilities. The original indictment filed in November 2015 charged Mr. Dryer with 13 counts including predatory criminal sexual assault, sexual exploitation of a child, indecent solicitation of a child, and aggravated criminal sexual abuse. Mr. Dryer was taken into custody in Illinois on December 13, 2015, and it was on that date that the 120-day speedy trial term began to run. Six hundred days later, on August 4, 2017, after a number of continuances had been agreed to on the original charges, the State filed a superseding indictment that included seven brand new charges of aggravated child pornography, all of them Class X. It is Mr. Dryer's contention on appeal that the new charges were subject to compulsory joinder with the original charges, and that by failing to seek dismissal of counts 14 through 20 on speedy trial grounds, Defense Counsel rendered ineffective assistance. The so-called Williams rule provides that when new and additional charges arise from the same facts as the original charges, and the State had knowledge of those facts at the commencement of the prosecution, the speedy trial term on the new charges is the same as on the original charges. The Illinois Supreme Court later clarified that the Williams rule only applies when charges are subject to compulsory joinder, but the key point here is that a defendant is not responsible for any delays he agreed to before new and additional charges were on the table. To be clear, you don't even reach the question of whether later charges are new and additional unless they're subject to compulsory joinder, and compulsory joinder only applies when charges are based on the same acts. So right off the bat, there's some tension between those two standards, but it's clear in this case that counts 14 through 20 of the superseding indictment are based on the very same acts of penetration, masturbation, and fondling that make up the original 13 charges, and the State essentially concedes as much in its brief. So how can charges that are based on the same sexual acts be considered new and additional? The case law directs you to compare the original charging instrument with the later charging instrument to determine whether the original charges provided adequate notice of the later charges. And while there are no hard and fast rules about when an earlier charge provides sufficient notice of a later charge, reviewing courts generally look to see whether the earlier charge involved the same elements, classification, and penalty as the later charge. For example, in Woodrum, the Illinois Supreme Court found that an original charge of child abduction provided sufficient notice of a later charge of child abduction, where the penalties were the same, the elements of the offenses were virtually identical, except that the later charge added the phrase for other than a lawful purpose. Or in this court's 2019 decision in Moffitt, an original charge of aggravated battery premised on bodily harm was found to provide sufficient notice of aggravated battery premised on insulting or provoking contact, where the classification and penalties were the same, and where the defendant might reasonably anticipate that the biting that gave rise to bodily harm might also be viewed as insulting and provoking. In this case, unlike Woodrum and unlike Moffitt, the original indictment did not provide adequate notice of the charges Dreyer would later face. For starters, the new charges are completely different in name. All seven were for aggravated child pornography based on allegations of filming, producing a film or visual portrayal, or soliciting an appearance in a film. The original charges were sexual in nature, sure, but none of them involved allegations of either possessing or creating pornography. As such, the elements of the later charges are distinctly different than the elements of the original charges. Also, since there were no incriminating files recovered from Mr. Dreyer's computer, not even the discovery would have alerted him to the possibility of having to defend against pornography charges. It is also significant to the lack of notice in this case that the new charges are categorically more serious than all but two of the original charges. All seven counts of aggravated child pornography in the superseding indictment are Class X with a corresponding sentencing range of six to 30 years. By contrast, only two of the original counts were Class X, while the remaining 11 range from Class 1 to Class 4. The Illinois Supreme Court has cautioned against this very scenario where the state essentially circumvents a defendant's speedy trial right, purposely or not, by lulling him into agreed continuances on lesser charges, all the while preparing its case for trial on more serious, not yet pending charges. So the state's primary argument here that the original and later charges are so much the same that Dreyer's agreed continuances on the earlier charges can be counted against him on the later charges simply does not hold water. That being the case, this court's 2006 decision in Boyd provides the proper framework for Dreyer's ineffective assistance of counsel claim. Boyd teaches that if a pretrial motion for dismissal on speedy trial grounds would have been successful and defense counsel did not pursue it, counsel was ineffective, and the proper remedy on appeal is dismissal of the charges. In fact, this case presents an even stronger claim of ineffective assistance than Boyd, since the seven Class X charges added to Dreyer's indictment had already passed their expiration date the moment they were filed, alleviating any doubts about potential trial strategy. The prejudice to Mr. Dreyer is also particularly clear, since the state ended up dropping most of the original counts before trial and focusing its prosecution on the new counts. Now, the state says that's not fair, that had it known that counts 14 through 20 were no good, it never would have moved to dismiss counts 1 and 2 and counts 5 through 13. But to be blunt, this is really not Mr. Dreyer's problem. If the state wanted to pursue pornography charges, it should have filed them back in 2015. This is not a situation where new evidence came to light. It all came down to this nanny cam footage that C.H.'s mother gave the police the day of the offense. Having missed the boat on the original charging decision, the state tried to bring a number of new, more serious charges over a year later, but at that point they should have known the risks they were taking in dismissing most of the original charges. Likewise, defense counsel should have known the superseding indictment was problematic. Because counts 14 through 20 were new and additional charges that had to be joined with the original charges in this case, and because Mr. Dreyer had already been in custody for more than a year and a half by the time they were filed, defense counsel's failure to seek their dismissal on speedy trial grounds was ineffective and those counts should now be dismissed outright. Counsel, are you thinking or are you finished? I'm finished. Thank you. Okay. I thought you might be coming back. Thank you. All right. Justice Burkett, do you have questions of Ms. Panik? Yes, I do. Thank you, Justice Hutchinson. Ms. Panik, were both Mr. Pomilia and Mr. Logan ineffective or just one of them? We're just speaking about the attorney who was representing him at the time the new charges were filed, which was John Logan. I thought Mr. Pomilia was the lawyer when they were filed and Mr. Logan came in when Mr. Pomilia withdrew. Am I incorrect? Well, I have that on July 13, 2017, Pomilia was discharged and John Logan was appointed. And then I believe John Logan appeared the same day the superseding indictment was filed. And Mr. Pomilia had been engaged in plea discussions basically throughout the proceedings, correct? Correct. And the defendant was, he rejected the state's offers and then the new indictment was brought, correct? Correct. And Mr. Pomilia was advised on the record that new charges would come and that if he filed any pretrial motions, there'd be no offers, correct? Yes. What information was missing from the original indictments that would not have given, that would have given the defendant notice that the child pornography charges might be possible? And that he would have to prepare to defend against the images that were captured on the nanny cam. What information was missing from the indictment, the original indictment? Yeah, well, I mean, they didn't say anything about his filming or depicting, you know, by means of a visual medium at all. So, I mean, the nanny cam was kind of this silent witness. It wasn't something he orchestrated. So in that sense, the charges, they're sexual and conduct related, but have nothing to do with either recording or memorializing or transmitting something in a visual medium. Well, didn't the indictment, the original indictments allege that he was in Texas and that he was viewing the images? No. No, I don't believe that's correct. Mr. Pomilia arranged for equipment to be at the jail so the defendant could view the evidence, correct? I believe so. And that evidence was the images that depicted the sexual acts, correct? Yes, but again, there was no allegation that Mr. Dreyer created that recording. So that's not a typical pornography situation. In your opening brief, you focus on compulsory joinder. Yeah. Not the test, which is whether or not the original charges gave the defendant sufficient notice to adequately prepare for them. And your position is that the defendant did not have notice that these other additional charges might come, despite the fact that it was actually said on the record that additional charges would come if the defendant didn't accept the state's offer? Well, to be clear, it's always been our position that compulsory joinder is required and that the charges are new and additional. The difference in focus between the opening and reply has to do with, you know, learning where the state was going to disagree with us or not. The fact that he was on alert that new charges were coming really has nothing to do with the analysis about whether the original charges provided sufficient notice of the later charges. And that's really all that matters, according to the case law. That's all that matters? It doesn't matter that he was told that additional charges would come? No, because at that point, I mean, I think we're talking a year into the case, at least when that happened. So even then, those new charges would have been untimely. So telling him you're about to face some charges that if your attorneys on the ball could be dismissed on speedy trial grounds really doesn't accomplish anything. And what is your position that what effect, if any, does the fact that the parties were engaged in ongoing plea discussions have on our analysis? Does it have any impact on our analysis at all? I think it's irrelevant, to be honest. Okay, that's all I have, Justice Hutchinson. Thank you, Ms. Penning. Thank you. Thank you, Justice Jorgensen. Do you have questions? Just so I understand your position, the images were taken from the nanny cam. They were not taken from the defendant's equipment. Is that a fair statement? Correct. So is it also your position that if he's put on notice that there are new charges coming, there was no indication on the record, at least, as to what those new charges would be? Well, I think there was, you know, since there were discussions and plea negotiations happening, it's entirely possible that they had a heads up about the nature of the charges. But, again, the fact that those discussions were taking place after the speedy trial term had run and the case law directs us to compare only the original charging instrument with the later charges to determine whether notice was sufficient. I don't think that it matters that he, you know, may have gotten a heads up before the superseding indictment was actually filed. And, again, so I'm clear, your position as to why there's no notice as to the later charges is because the earlier charges do not mention creating, possessing a recorded image. Correct. Okay. Justice Hutchinson, that's all I have. Thank you. Thank you, Justice Jorgensen. Ms. Pettigrew, didn't, in fact, your client have an opportunity to see the unfiled superseding indictment before it was filed during those plea negotiations? I don't know for a fact that he saw that, but assuming that's the case, I don't think it changes the analysis. Well, the issue that you're making or you're contending is lack of notice. Even before they were filed, I believe the record indicates that counsel was given an unfiled copy of the proposed charges and so that certainly would indicate some sort of notice, wouldn't it? Right, but this isn't notice in an abstract sense. It's specifically having to do with the notice of the later charges created by the language in the original charges. So what happened after the original charges isn't really material. The cases, Williams, Woodrum, Phipps, they're all clear that you have to compare the charging instruments to resolve whether the defendant had notice of the later charges, essentially to see whether the defendant knew what he was agreeing to when he was agreeing to these continuances. So the fact that more than a year later, there may have been a heads up about additional charges coming doesn't alleviate the prejudice that's the primary concern in those cases. A good part of that first year after he was arrested, your client was fighting extradition, wasn't he? He was up to a point that I mean he was brought into custody in Illinois in December, so you know the offense was... That's about six months after the offense. Yeah, but I mean our brief assumes that the custody date assumes begins when he was in Illinois, so that's not a point the state has disputed. No, but they were rather fixated between the parties on whether he would be extradited or not, weren't they? Again, that's mostly that's before I kind of get involved so it's not something I know a lot of details about but yeah that was an issue early on. Okay, and once he got here were the record reflects although I can't say exactly what they were that there were other pre trial motions that were argued were filed and argued weren't there? Yes. Okay, so they're not just concentrating on the language the notice or anything of the indictment they all relate to basically your client's freedom. Isn't that correct? Well, there were some motions to dismiss the charges on other grounds. I guess I'm not understanding where you're going with the question. Well, the issue is you say that it took up to a year before they even considered filing these. Right. Weren't there other things going on that might have precluded filing these indictments, the superseding indictment? Yes, but even if I'm assuming that you know Mr. Dreier was agreeing to either causing or agreeing to the delays that happened up until you know the superseding indictment was filed but the whole point of the cases were relying on is that those delays can only count against him for the charges that he knew were on the table, based on the indictment that was originally filed. So it doesn't, there's not a dispute about his being responsible for those delays on the original charges. It's strictly about whether those can also be applied to the new charges. Okay. Now you say the child pornography charges are of course class X felonies weren't counts one and two of the original indictment class X felonies as well. Yes, they were class X felonies. Okay, so when you say that the new charges for the superseding indictment included charges that were more serious. That's not exactly accurate is it. Well, it is accurate in the sense that the counts one and two of the original indictment are only factually paralleling. I think four of the seven new charges. So when we look at count 1617 and 20 of the superseding indictment. Those don't have anything to do with the sexual acts alleged in the previous class X offenses and counts one and two. And then a second point which I think we made in the brief was that even though there were a couple of prior class X charges, the state's case is likely a lot harder to prove on those offenses, they were essentially charging him with the physical acts of assault. When everybody agrees he was in another state and so it would be a much more complicated sort of agency theory that the state would have to prove at trial. So to the extent that he knew he was facing those charges he he or his counsel may have been more confident about a better outcome on those than on the charges, the seven class X charges he ultimately faced attorneys are often confident that they can get their client exonerated on certain cases and they're often wrong. Isn't that correct. Absolutely. Yeah. And so you've got you still have class X felonies in the initial indictment and hard to prove I don't think is really a factor that's considered when we talk about serious or not serious offenses more serious or less serious. Correct. That's true. But again, the class of the offense and the penalty range is just part of the analysis and there's really no dispute that the earlier charges don't include the sorts of allegations of filming or creation of film or depicting in a visual medium that the pornography charges include Right in Boyd, which you rely on pretty heavily in your analysis. In that case, the charges were known when the other charges were filed, it was admitted or agreed to the charges were subject to compulsory joinder the parties agreed and the changes were new and additional which is the issue here I in in large part, that was likewise agreed to. Yeah, how can that be controlling on this case. Well, it's certainly controlling on the framework of the ineffective assistance claim and the standards that apply. I think it's instructive on the factual elements since You know, in that case he was charged with aggravated battery and armed robbery and later on brought in some serious home invasion charges that ended up having to be dismissed. So I think there are real parallels, even if the actual points of dispute in that case are different. Thank you. Do either of my colleagues have questions based upon mine. No, I do not. Thank you. I do just justice such and just very briefly. The allegations in the indictment. The original indictment specifically say that the defendant engaged in this kind of quote by means of the internet, does it not. Yes. Okay, thank you. That's all I have. Justice Hutchinson. Thank you. All right, Miss panic, you will have an opportunity for rebuttal if you choose after we hear from Miss Lee and Miss Lee if you are ready, you can unmute yourself and go forward. Thank you. Good morning, Your Honors and counsel. I was going to start by answering a couple of the questions that just arose through questioning, although Justice Burkett had actually just pointed out one of my primary answers, which is that the charges absolutely do say they he solicited over the internet. In addition, you can watch the SD card video and everything you see ch the victim, you know, is this a good angle which camera angle Can you see my anus this way. Can you see how long do I continue to masturbating with this pudding till we can play the game again don't always this good Can you see is this better and you can see that. So that's the evidence, but it's also that the charges say that he in fact solicit be solicited over the internet and discussed all of this over the internet. In terms of the the charges, the pornography charges they are in fact called pornography but you do need to look at those elements that are underlying it and they do in fact fit within the course of conduct that was already charged. The draft, the draft of the indictment was in fact tendered prior to the, the introduction of the newest attorney which defendant demanded as a third lawyer. And that was in April of 2017. And then it was tendered and they actually had an offer that included those charges. Then the newest attorney. After the newest attorney came in, which was, I think was Logan. He consented to a 402 conference which included consideration of those charges as well. So the record sites for that are 47 to 4952 to 53. And then 54 to 58. So definitely there were ongoing plea negotiations, there were pre trial motions that defendant had filed, which were not proceeded on partly because they knew offers would be withdrawn if they did in fact proceed on them. But and then discovery was absolutely voluminous everybody agreed on that. There also was a contemplation of whether or not defendant was going to engage in a sex offender evaluation for the purposes of the negotiations. And so that also was part of the delay which was record at 60 to 61. So, I actually wanted to start out originally talking first about defendants premise that really a Strickland is the Strickland analysis is a get out of prison free card, regardless of any manipulations or actions by the defendant, regardless of any prejudice to the victims, and regardless of any prejudice to the people. Unless the unless the defendant 100% concedes that the people can reinstate the 11 charges that they dismissed. It's really imperative to see the whole picture here. And on page seven of the reply brief, it's pretty clear that they're not just going to concede that There isn't any dispute that defendant committed these horrendous and disgusting acts against the 10 year old boys, he was instructing them to do things over the internet and you can watch them on the card on the video because of the nanny cam. put a pen in your anus, do you know, take the pudding and how long do I have to keep doing this, and go get me your friend have a friend come over so you guys can do acts of penetration together, and with objects, it's horrendous. And that certainly was on notice to the defendant of the that it was on the, the CD card the SD card I'm sorry the video. As far as whether or not defendant preserved it that's really not the issue for those charges it doesn't say anything about preserving it says depicting it in an in a visual manner which over the internet also applies this electronic communication and it was in fact over the Xbox via an Xbox camera that CH had on his end. But defendant was the one directing everything about the angles and all of that. Defendant actually concedes that there was no plain error and I just want to say the people resent the claim that this is somehow disingenuous to raise the fact that plain error was not raised versus ineffective assistance disingenuous means dishonest and and and absolutely it was not only wholly appropriate but it would have been remiss not to point it out. So, then you have to look at the Strickland analysis and whether or not it impacts these charges and I don't believe it does. The defendant agreed to each continuance each and every one up until the time. And then again past when these were filed he continued to agree to continuances after these were filed. He wanted to engage in 402s they wanted to plan strategy they wanted to file pretrial motions, all of those had yet to be litigated. Defendant was the one who requested having a third lawyer. And obviously at that point the court, the case was not going to be ready for trial because the new counsel needed to get time to prepare get up to speed on the discovery and litigate all of the defendants litigate the defendants unlitigated pretrial motions, which, you know, the defendant wanted to litigate. The very first court date defendants very first attorney, which was Prorak, I believe it was on December of 2015 record four. We are not asking for a speedy trial, and it continued in that vein throughout the entire time he had his second attorney, which was Pamelia, and that was through, you know, beginning in this July of 2016, all the way up until July of 2017, when the defendant first mentioned that he might in fact want 100 days speedy trial, but at the same time, he was asking for new counsel. And obviously, new counsel was absolutely not going to be ready to go. The, the charges at issue were, like I said, introduced before Logan came on board through a draft discussion in court and then actually a draft of the indictment plus an offer including those things. And they continued again, as I said to engage in 402s after the new charges were brought. We cannot at this point put the victims, most importantly, or the people in the same position because essentially this was not, again, a Hobson's choice, this was not an ambush, and this was not the people lulling the defendant into the delays. If anything, it's now the defendant lulling the state into, you know, choosing right before trial, which is not an unacceptable strategy, which charges they're going to proceed and not proceed on. It was a few days before trial that the state did go ahead and dismiss those 11 very serious charges. There were two class X's, which had mandatory life, plus nine other class one to four felonies that were also dismissed that might possibly have been consecutive served, and defendant doesn't even concede that he would allow those to be reinstated. So what defendant is doing is using all of this as a sword instead of a shield, which is not what you're supposed to do. And in fact, there is absolutely no showing that his trial strategy changed. From the outset, he was trying to hide behind his out-of-state residency, his computer anonymity to conceal his identity and deny that there was proof that he was kill, quote, kill, that my name is kill, who is the one who directed the 10-year-old boys to engage in these horrific acts. So it's not really the title of the charge, as the court has alluded to somewhat during the questioning, it really is the notice and there's no question defendant had notice well before trial. So we do in fact ask the court to affirm. Thank you. Thank you, Miss Lee. Justice Burkett, do you have questions? Yes, I do. Thank you, Justice Hutchinson. Miss Lee, the defendant actually got into an argument with the trial court regarding his speedy trial rights, correct? Yes, he did. And actually, that was the part when he asked for his third lawyer. It wasn't just about speedy trial. But actually, at that time, if you look closely at the record, the court also says, this is the first time I have ever heard you say anything about speedy trial. That was not where this was headed or where this was progressing or where it was going. So yes, you know, you can ask for one you hadn't, you've waived it, you've asked for continuing, you've allowed continuances, and there is no speedy trial request until now. But, you know, clearly by requesting a new attorney, you're waiving that now, and this is the first time you're requesting it. And that's all in that whole argument section, you'll see. And it wasn't the only complaint. The other complaints had to do with alleged lack of communication. He did say he would have liked him to be proceeding on those motions to dismiss. But again, they also wanted 402 conferences, and the state was going to withdraw offers if those pretrial motions were litigated. So there was a conflict between, I want to try to engage in negotiations, and I want to litigate my motions to dismiss. That's all I have. Thank you. Thank you. Justice Jorgensen, do you have it. Yeah, I have, I have a couple questions. So it is your position that the defendant never raised a demand for speedy trial until approximately July of 2017. Yes, and it's during the argument that pretty much that Justice Burkett was just referring to, but at the same time he waived some of it because it was a, he said he wanted new counsel and the court very clearly explained that that was obviously going to delay it too and that would be attributed to him. So he waived it all the way up until that point. And in fact, like I said, if you look at page four, it was, we are not asking for a speedy trial that was the very first court date. So your position is that affirmative statement, there never was a speedy trial triggered at all until July of 2017. Well, and then it triggered for two seconds until the defendant. Oh, I'm sorry. Yes or no, he didn't ask for a speedy trial and your position is, is it was not triggered until July of 2017. Yes or no. Yes, but it, it also didn't trigger them because Well, did he ask for a speedy trial until in July of 2017 or not, whether or not he thereafter waived it is not the question. The question is, when did he first. That was the first mention of speedy trial. Yes. Okay. All right. And the, the pornography that went to trial that was respect with respect to images over the internet. Correct. Yes. That's my two questions. Thank you. All right. Thank you, Justice Jorgensen, Miss Lee. Although the allegation is that it is over the internet, and that is technically within the, the definitions in the pornography statute. This is not your usual pornography case where The defendant obviously knew about something because he was either recording it or he was preserving it on a computer or in this case, it could have been that game. So this is not your, your classic pornography. Right. It is, it is unusual facts, but there is nothing in the statute that requires any kind of recording or memorializing it. It just says depicting it. And in fact, the defendant was certainly directing it. You can watch the video from the nanny cam and you see CH saying, Oh, can you see this now? Is this good? Can you now see the hole in my anus? I mean, is this close enough? Do I need to turn it? All of that. So the fact is whether defendant had the notice. He had, in fact, the notice that he was soliciting these acts via discussions over the internet. And he had all of that discovery. So it's not it. The fact that there was this nanny cam video is actually just, well, luckily that that's why the police became aware of it. But it, it didn't, it wasn't needed to complete the offense. The offense was completed when the defendant said, use your Xbox Kinect camera, show me these sexual acts. I want to see them. Okay. Did, did the boys ever actually see Kill? Did they actually see his face? They heard him, did they see his face? No, CH testified about that. And what he said is that the camera on defendant's end, which would have been the Kinect camera was facing down. So it was either completely blacked out on a table or occasionally he saw feet and, and, and legs. As far as CH was concerned, this was an 18 year old, because that's what Kill told him he was. And he was looking up to him and trying to please him, which actually you can see when he's like, look, I really do have a pubic hair on my 10 year old penis. See that Kill? Look at that. So it took some tracking down technology sometimes, of course, and criminals out, outrun the, the language of the statute sometimes, but if it fits, it was improper and it was a crime and it does in fact fit. It fits all the language. It just, depending on which, which way you look at it, we absolutely could have proceeded on the, on the charges that were in the original indictment and we can easily proceed on the ones that these that are at issue. Right. And the fact remains, he was, according to the indictment on the internet, and therefore he had noticed that this could be, could be an issue and could be within charges that were filed. Absolutely. All right. Thank you, Miss Lee. Either of my colleagues have questions based upon mine. No, not for me, Your Honor. I have one additional question and it is your position that the knowledge of, you know, the directing, etc, that you have just discussed, that was included in the discovery that was sent to the defendant, correct? 100%. And when was the discovery tendered? Right towards the beginning of the case, they already had all the video. So you would say within a month or two of the December date? Yes, that's my understanding. Okay. All right, thank you. I have nothing else. Thank you, Miss Lee. We will return now to Miss Penick. If you choose to do rebuttal, now is the time. Okay, yeah, just just a couple quick points. By my reading of the original charges, the language about being by means of the internet only appears in some of those counts, I believe, seven and eight and 10 and 12. And again, it gets important since the analysis is comparing the old charges to the new charges that are the same, to point out that then not all of the new aggravated child pornography charges are based on the same acts that appear in counts seven, eight, 10 and 12. So while we dispute that, that language by means of the internet is provide sufficient notice that he would have to face class X aggravated child pornography charges, even if you believe that that analysis only affects some of the charges, not most of them. Additionally, I wanted to reiterate that the fact that speedy trial was not raised in a more timely fashion by others, the defendant or his attorney has everything to do with his attorney being ineffective which which is the heart of our claim I mean we're not we're not saying this happened correctly we're saying that his attorney made a mistake. And additionally, you know, the state argues that this is so tremendously unfair to them, and that it was so obvious to anyone, apparently looking at the original charges that pornography was that issue. But I would suggest that perhaps the prosecutor didn't even think at that time that pornography was at issue and that that's why that was not included in the original charging instrument. And so I think it's a little ironic to try to hold the defendant to a higher standard of awareness than the prosecutor who's charged with knowing the law and making smart decisions accordingly, including the decision to dismiss a number of charges, when they should have known the risks in doing so. Unless the court has any additional questions. All right. Thank you, Miss panic. Justice Burkett Do you have any questions. Just briefly, Miss panic. Could you address the state's forfeiture argument that this plane error analysis, which is missing from your opening brief. Sure. Well, I mean, we, you know, we welcome the courts reversing on second prong plane error rather than ineffective assistance if it would prefer but we did frame the issue in terms of ineffective assistance because the case parallel the void case so strongly. So, we're not conceding that plane error doesn't apply we just didn't take that approach. How do you respond to the state's argument that all of the conduct, which is alleged in the new charges was outlined in the original charges and that the defendant viewed the images over the internet. How do you respond to that. It's all the same. Well, I think it's, it's different because what's the same is the sexual conduct and that's what brings it in line with the compulsory joinder statute, but what's different is the defendants conduct and that's that couldn't be more clear in the later pornography charges we're talking about filming and depicting and creating and directing and there's none of that in the original charges. In the original charges, it states that the defendant solicited CH and WM to remove their clothing and perform sexual acts for the purposes of his sexual arousal. And that this was done by means of the internet. Yeah, I understand that but did by means of the internet language by my reading was not in all of the accounts. And so all of the sexual acts, do not have that are in the new charges do not have a parallel and the old charges that include the by means of the internet language. In addition, I mean the fact of soliciting is not the same as either creating or possessing pornography, and the fact that those differ is is evidenced by the fact that pornography charges, carry a more severe penalty than, than some of the original elements are not present in the original charges. The conduct. My question was the conduct that's outlined. Yeah. Conduct is the same. It is all incorrect. And that's all actually that's all I have. Thank you. Thank you. Thank you. One question of you had indicated that the defendants attorney. From the beginning, basically is saying to the court, we're not raising a speedy trial issue here, we're not in a hurry to get this case up for trial. And you, and if I understood you correctly, your position is that was a mistake. Um, well I, I guess I was not very precise and how I said that because the new charges weren't on the table, I believe at the time he said that. So, if we're talking about statements before the new charges were on the table then no that's, that's not a mistake. Okay. And there, I mean, here the these kind of cases, you're generally looking for an offer from the state and Defense Council, almost always are going to agree to the continuance by agreement or motion defendant in an attempt to get some opportunity for negotiation So, tell me how him waving his speedy trial rights was a problem. Sure. Well, it wasn't ineffective, as to the original charges there's there's no contest that any continuances he agreed to on the original charges can be properly attributed to the defendant. The issue is whether, and this is where the the Williams rule comes into play, whether he can be held to those same agreed delays, with respect to charges that were not yet pending at the time he made those agreements, right and your position as we follow that to it to its logical conclusion is that he never had notice of pornography, because only some of the original offenses said by way of the internet. Yes. Okay, well I would, I would assert that even the internet language is not specific enough to alert him to what was coming but even if you accept that then yes only some of the charges contain that language. Thank you very much. I have no further questions. Thank you. Thank you, Justice Jorgensen. Miss panic I have one question. You very carefully told us where certain languages in one and not in another in terms of the initial in the superseding indictment. Is there any requirement that every charge in the initial indictment must provide notice, or is there any authority that requires that or should it be looked at as a, as this is the indictment. This is what the general charges are. And then this is the superseding indictment and this is the general charges and this is how you compare. Um, yeah, it does get a little confusing trying to cross cross reference all these things. I think the most helpful way to do it is to look at the new charges, that is to say counts 14 through 20. And with respect to each one. Look in the old charges for for notice of what was what he was facing in the new charge so so when when you're talking about the severity. It doesn't really matter that more severe charges were on the table. If those severe charges don't pertain to the same physical acts so it does get a little particular about how you match it up but I don't think it's necessary to match it. We don't have to say that it's all one, one ongoing course of conduct that makes it the same we've broken it out into. There's new counts of penetration that track old counts of penetration and new counts of masturbation that count old tracks. So it's broke. It's broken out by means of the sexual conduct. I don't know if that answers your question. Yeah, generally, thank you. All right, either of my colleagues have a question based on questions based upon mine. No. Okay. Well, Council Miss panic Miss Lee thank you very much for your presentations this morning. We do appreciate them the thorough have presentations, we will take this matter under advisement, a decision will be rendered in due course. And Mr. Clark if you would give us about 15 minutes, we will return at that time. And so please extend our apologies to next parties waiting, and you may now close this zoom. Thank you, Your Honors. Thank you. Well done. Thank you.